UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DARLENE LOUISE FELKER,

    Plaintiff,

v.                                    Case No.: 2:22-cv-221-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Darlene Louise Felker sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner of Social Security's decision denying her application for disability insurance benefits. (Doc. 1.)[1] For the reasons below, the Commissioner's decision is affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 20, Doc. 21) and are not fully repeated here. Felker filed for disability benefits claiming she could not work because of neuropathy, PTSD, auto immune problems, nash, retorcle, sleep apnea, and high blood

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

pressure. (Tr. 121.) After her application was denied, Felker sought review by an administrative law judge ("ALJ"). (Tr. 10.)

Following a hearing, the ALJ agreed that Felker was not disabled. (Tr. 11, 20.) To make this determination, the ALJ used the multi-step evaluation process established by the Commissioner. *See* 20 C.F.R. § 404.1520(a).[2] The ALJ found that although several of Felker's impairments qualified as severe, she retained the residual functional capacity ("RFC") to perform light work with restrictions:

> [She can] lift/carry 10 pounds occasionally and five pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for two hours in an eight-hour workday; no operation of foot controls; must be permitted to stand and stretch after 60 minutes of work while being off task for up to two minutes; occasional climbing of ramps or stairs but no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; frequent handling and fingering; and no exposure to hazardous machinery or unprotected heights.

---

[2] An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

(Tr. 16.) After considering the RFC and other evidence, including vocational expert testimony, the ALJ ultimately concluded that Felker could perform her past relevant work as an accounts receivable clerk. (Tr. 20.) Thus, Felker was not disabled as that term is defined in this context. (Tr. 20.)

Felker further exhausted her administrative remedies, and this lawsuit timely followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553,

1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Felker argues that the ALJ failed to properly evaluate her mental health limitations. (Doc. 20 at 3.) Upon closer inspection, her argument is essentially twofold: first, the ALJ wrongly considered her mental limitations to be mild at step two of the sequential evaluation process; and second, this error resulted in an inaccurate RFC finding at step four. (Doc. 20 at 16.) Thus, the Court considers whether substantial evidence supports the ALJ's treatment of Felker's mental health limitations at these two steps.

**A. Step Two**

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). And when the claimant

alleges a mental impairment, as here, "the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as 'Paragraph B' criteria. The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324-25 (11th Cir. 2021) (citing 20 C.F.R. § 404.1520a(c)(3)). The ALJ rates the claimant's limitations in each area as none, mild, moderate, marked, or extreme and must explain why. *Id.* at 1325. Ultimately, "to find the presence of a [severe] mental impairment, the ALJ must find that a claimant has an 'extreme' limitation in one of the four functional areas or a 'marked' limitation in two." *Id.*

Finally, important for present purposes, an ALJ need not identify every severe impairment to satisfy step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). "[S]tep two of the sequential evaluation acts as a 'screening' or 'filter' to eliminate groundless claims. Accordingly, we have recognized that step two requires only a finding of 'at least one' severe impairment to continue on to the later steps." *Tuggerson-Brown*, 572 F. App'x at 951. In other words, so long as the ALJ identifies any severe impairment at step two, there is no reversible

5

error because that is enough for the claimant "to continue on to the later steps." *Id.*; *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability . . . [,] is enough to satisfy the requirement of step two.").

The ALJ found that Felker had several severe impairments. (Tr. 13.) Thus, regardless of any mistake with the treatment of her mental limitations, there is no reversible error with step two. *See, e.g.*, *Tippenhaver v. Kijakazi*, No. 20-CV-62555, 2022 WL 3344625, at *4 (S.D. Fla. Aug. 12, 2022) (upholding ALJ's decision that failed to address the claimant's should impairment at step two because "he found [the claimant] to have at least one severe impairment and, consequently, proceeded to the next step of the sequential evaluation").

**B. Step Four**

The real crux of Felker's argument rests on the ALJ's analysis at step four of the sequential evaluation process. She asserts "the ALJ erred when he failed to properly include mental limitations described by the consultative psychological examiner, Dr. Visser." (Doc. 20 at 6.) According to Felker, this improper evaluation of a medical source then led to the ALJ disregarding important evidence in his RFC assessment. The Court addresses the medical source evaluation before turning to the RFC construction.

6

*1. Whether the ALJ Improperly Assessed a Medical Opinion*

Under the current standard of review, the Court considers whether substantial evidence supports the ALJ's decision to discount Dr. Visser's medical opinions. Dr. Visser found Felker struggles with anxiety and depression. (Tr. 1049.) He further ranked her persistence as "capable but affected by pain." (Tr. 1050.) For some categories he provided a little more nuance. For example, in her ability to remember, Dr. Visser noted "some difficulty with immediate recall and delayed recall." (Tr. 1050.) And as for Felker's capacity to sustain concentration, Dr. Visser said "she had difficulty doing multi-step mathematical problems." (Tr. 1050.) When asked to describe Felker's ability to handle work pressure and changes, Dr. Visser stated: "She has had some self-confidence issues throughout her life." (Tr. 1050.) And finally, he found that "Ms. Felker is capable of managing her finances." (Tr. 1050.)

When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." 20 C.F.R. § 404.1520c(a).

Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* § 404.1520c(b)(2). And because of their importance, the ALJ must explain "how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* Put simply, the ALJ must assess the factors of supportability and consistency for each medical opinion. "Supportability" refers to how well a medical opinion is bolstered by objective medical evidence and explanations provided by the medical source giving the opinion. "Consistency" is a measure of how the medical opinion aligns with evidence from other sources (medical and nonmedical). *Id.* § 404.1520c(c).

Here, the ALJ explained how he evaluated these factors:

> The opinions of the psychological consultative examiner are not persuasive (16F). The examiner opined that the claimant had some difficulty with immediate and delayed recall and doing multistep mathematical problems. First, there are no function-by-function limitations, as these appear to be mental status observations, so these opinions are not helpful in creating mental limitations. Further, this one-time exam is inconsistent with normal cognition from multiple providers including the psychiatric nurse practitioner, family nurse practitioner, orthopedic specialist, and physical consultative examiner, all of which were generally normal. Finally, these opinions are not consistent with the claimant's activities of daily living that include work activity, like driving, shopping, and socializing with friends that require sustained memory and concentration as mentioned throughout the record (14F/1; 15F/3; 18F/9; 20F/11; 25F/2)

(Tr. 19-20.) The ALJ's comments about Dr. Visser's recall and mathematical problem observations relate to supportability. Further, they are bolstered by substantial evidence because they identify a shortcoming in Dr. Visser's analysis. A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2).

When viewed in this light, Dr. Visser's observation about Felker's recall difficulties fails to express what she is still capable of despite her limitations. Further, Dr. Visser's comment may be read as a description of Felker's mental state during the assessment rather than a projection of her current capacity for work, an issue noted by the ALJ. (Tr. 19 ("these appear to be mental status observations").) Dr. Visser's comment about Felker's ability to sustain concentration, as written in the past tense, is certainly subject to this criticism. (Tr. 1050 ("She *had* difficulty doing multi-step mathematical problems.") (emphasis added).) Thus, Dr. Visser did not adequately describe whether and how Felker can sustain concentration despite her impairments. As a result, the ALJ was right to label these findings as "not helpful in creating mental limitations." (Tr. 19.)

Substantial evidence favors the ALJ's consistency finding too. He correctly noted that Dr. Visser's observations are contradicted by the otherwise "general normal" findings from other medical professionals including the psychiatric nurse practitioner (Tr. 19, 1183-1209), family nurse practitioner (Tr. 19, 1210-1223), orthopedic specialist (Tr. 19, 1162-1182), and physical consultative examiner (Tr. 19, 87-98, 100-119). For example, just two months after beginning mental health treatment, Felker reported feeling "significantly better," that counseling was "very helpful" and that she was "functioning better overall." (Tr. 18, 1192.) All this despite working two jobs. (Tr. 1192.) The ALJ also noted that Felker's activities of daily living, including working, driving, shopping, and socializing with friends, do not support Dr. Visser's observations. (Tr. 19-20, 1029, 1037, 1070, 1091, 1163.) Thus, the ALJ properly addressed the supportability requirement.

Because substantial evidence supports the ALJ's treatment of Dr. Visser's medical opinions, there was no error at this stage of the assessment.

*2. Whether Substantial Evidence Supports the RFC*

In step four of the analytical process, the ALJ also assesses a claimant's RFC and ability to do past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). The RFC, defined as the most the claimant can still do despite her limitations, is based on an evaluation of all the relevant evidence in the record. *See id.* §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p,

10

1996 WL 374184 (July 2, 1996). Error arises only when the ALJ rejects medical evidence from the RFC "without (at least) providing a good reason for doing so." *Sneed v. Comm'r of Soc. Sec.*, No. 6:13-CV-1453-ORL-TBS, 2015 WL 1268257, at *7 (M.D. Fla. Mar. 19, 2015); *see also Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992) (Johnson, J., concurring) ("Although the ALJ could have legitimately discounted the diagnoses, he could have done so only if he had clearly articulated his reasons for such action[.]"); *Whisby v. Colvin*, No. 5:13-CV-360 MTT, 2015 WL 150188, at *3-5 (M.D. Ga. Jan. 12, 2015) (finding error when the ALJ made an arbitrary determination). And finally, the task of determining a claimant's RFC and ability to work rests with the ALJ, not a medical source. *See Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016).

Felker essentially argues that substantial evidence does not support the RFC because the ALJ failed to address the mild mental limitations he found in step two. (Doc. 20 at 9-13.) According to Felker, he had to do so while evaluating "the claimant's entire medical condition," including non-severe limitations. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011). Contrary to Felker's claim, the ALJ did not err in this respect. As noted above, he evaluated the mild mental limitations found by Dr. Visser and compared them to the record as a whole, including other medical opinions and Felker's own reported activities of daily living. (Tr. 18-20.) He properly rejected

11

Dr. Visser's report as unpersuasive. (Tr. 19.) Additionally, during the RFC assessment, the ALJ thoroughly discussed Felker's own testimony related to her mental impairments and found her claims unsupported by the medical evidence. (Tr. 18.) Ultimately, the ALJ concluded that "[w]hile she has some mental symptoms on occasion, overall, her mental status exams and activities of daily living are generally normal and do not more than minimally affect her ability to work." (Tr. 19.) This is all he needed to do. *See, e.g. Mielbeck v. Comm'r of Soc. Sec.*, No. 2:20-CV-987-JLB-MRM, 2022 WL 8206071, at *15 (M.D. Fla. Aug. 11, 2022). The ALJ did not have to include mental limitations in the RFC itself because he found only mild mental impairments that did not affect Felker's ability to work. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016); *Mielbeck*, 2022 WL 8206071, at *15 ("[P]ersuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations [at step 2.]"). Thus, the ALJ did not err in building the RFC.

That leaves one final issue. Felker argues the ALJ's errors were not harmless. (Doc. 20 at 15-16.) But harmlessness only comes to bear if there were errors. Felker has failed to demonstrate any, and thus this argument is moot.

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings. Accordingly, the Court **AFFIRMS** the Commissioner's decision

and directs the Clerk to enter judgment for the Commissioner and against Darlene Louise Felker and close the file.

**ENTERED** in Fort Myers, Florida this April 18 2023.

/s/ Kyle C. Dudek<br>
Kyle C. Dudek<br>
United States Magistrate Judge

Copies:  All Parties of Record